UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE PUMPHREY,<br><br>    Plaintiff,<br><br>    v.<br><br>BRANDON BATTLES, et al.,<br><br>    Defendants. | Case No. 21-cv-09005-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. Nos. 16, 22 |

This civil rights case ("*Pumphrey II*") arises from Defendants' detention of Plaintiff at Martinez Jail on June 8, 2019.[1] (*See* Dkt. No. 3.)[2] Before the Court is Defendants' motion to dismiss the complaint as duplicative of Plaintiff's earlier-filed case, *Pumphrey v. Contra Costa County* ("*Pumphrey I*"), No. 3:20-cv-08474-JSC, on which this Court entered judgment on March 3, 2022. (Dkt. No. 16.) Having carefully considered the parties' briefing, and having had the benefit of oral argument on March 3, 2022, the Court GRANTS the motion in part and DENIES in part for the reasons explained below.

## BACKGROUND

**I.** *Pumphrey II* **Complaint Allegations**

On June 8, 2019, Plaintiff was sitting in his parked car outside his girlfriend's apartment in Pittsburg, California. Pittsburg police officers pulled up behind the car, arrested Plaintiff, and took him to Martinez Jail. Plaintiff was booked and taken to a holding cell to use the phone to

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10, 19.)

[2] Record citations are to material in the Electronic Case File ("ECF") for *Pumphrey II*, No. 21-cv-09005-JSC, unless otherwise indicated; pinpoint citations are to the ECF-generated page numbers at the top of the documents.

arrange bail. Inside the holding cell, Plaintiff got into a brief physical altercation with another person regarding the phone. After the altercation had ended, several deputies came into the cell and attacked Plaintiff, "slamming him to the ground as well as punching and kicking him in the ribs after they already had his hands subdued behind his back." (Dkt. No. 3 ¶ 15.) The deputies handcuffed Plaintiff, brought him out of the cell to sit down at a medical intake table, and "then slammed [his] head onto the counter, causing him to suffer a severe gash on the left side of his head." (*Id.* ¶ 16.) Later, the deputies took Plaintiff to a cell by himself and pinned him to the ground with their body weight. After they left, Plaintiff passed out. When he regained consciousness, he had severe pain around his rib cage, had difficulty breathing, and could not stand or walk. He repeatedly requested medical care but the deputies ignored him. He endured extreme pain for several hours before being released on bail. Family members drove Plaintiff directly to the hospital, where doctors determined he had several broken ribs on both sides of his body.

In the operative complaint, Plaintiff brings claims for excessive force and denial of medical care in violation of his Fourteenth Amendment rights as a pretrial detainee and for disability discrimination under the Americans with Disabilities Act. (*Id.* ¶¶ 20–39.) Defendants are Contra Costa County, Deputy Brandon Battles, Deputy Dwight Childs, Deputy Tiffany Yarnell, Deputy Ridgers, Deputy Garcia, 15 Doe deputies of Contra Costa County, and 10 Doe health care workers of Contra Costa County Health Services. (*Id.* ¶¶ 2–8.)

## II. *Pumphrey I*

*Pumphrey I* also concerned the events of June 8, 2019. (No. 3:20-cv-08474-JSC, Dkt. No. 1.)[3] Plaintiff alleged that while he was calling his girlfriend from inside his parked car, Pittsburg police officers pulled up and asked for his registration and insurance. The officers "snatched his phone and threw it in the grass." (*Id.* ¶ 19.) They asked Plaintiff if he was on probation or parole,

---

[3] The Court GRANTS Defendants' request for judicial notice, (Dkt. No. 17), of documents on the *Pumphrey I* docket. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (explaining that, at motion to dismiss stage, courts may take judicial notice of matters of public record not subject to reasonable dispute).

2

1  and Plaintiff replied that he was on probation for a DUI.  The officers ordered Plaintiff to get out
2  of his car, which he did.  Plaintiff's girlfriend's daughter was walking nearby and asked Plaintiff if
3  he wanted her to get her mother; Plaintiff said yes.  The officers told Plaintiff to sit on the curb and
4  started asking Plaintiff about his probation.  They searched Plaintiff's car without consent and then
5  informed him that they were towing his car because he didn't have a license and was on probation.
6  Plaintiff pleaded with the officers not to tow his car.  The officers then decided to handcuff
7  Plaintiff and put him in the back of the police car.  Plaintiff told the officers several times that the
8  handcuffs were too tight, but they did not adjust them.  Other officers arrived and then the group
9  "snatched the Plaintiff back out of the police car and began to issue various strikes with their
10 hands and knees to the Plaintiff's body."  (*Id.* ¶ 27.)  "[A]t least one Defendant officer placed his
11 knee on the back of the Plaintiff's neck with extreme force, while his hands were cuffed behind his
12 back.  The Defendant officers then placed the Plaintiff in a bodywrap device, which severely
13 inhibited his ability to breathe," then "picked the Plaintiff up from the ground and slammed him in
14 the back of the same police car."  (*Id.* ¶¶ 28–29.)  The officers brought Plaintiff to Martinez Jail.
15 From that point forward, the factual allegations in *Pumphrey I* mirror those in this case.  (*Id.* ¶¶
16 30–42.)

17 *Pumphrey I* brought claims for excessive force in violation of Plaintiff's Fourth and
18 Fourteenth Amendment rights, for unlawful detention in violation of his Fourth Amendment
19 rights, and for deliberate fabrication of evidence in violation of his Fourteenth Amendment rights.
20 (*Id.* ¶¶ 43–72.)  The complaint named Defendants Officer Colton Harvey, Officer Dillon Tindall,
21 Officer Jesus Arellano, Officer Thompson, Officer Oreja, Officer Seaborn, Officer Goldman, 25
22 Doe officers of the City of Pittsburg, Contra Costa County, and 25 Doe deputies of the County.
23 (*Id.* ¶¶ 2–10.)  Plaintiff settled with the City of Pittsburg Officers in September 2021, (No. 3:20-
24 cv-08474-JSC, Dkt. No. 47), such that the only remaining named defendant was Contra Costa
25 County.

26 After the deadline to move to amend had passed, Plaintiff filed a motion for leave to file an
27 amended complaint.  (No. 3:20-cv-08474-JSC, Dkt. No. 50.)  The Court denied the motion on
28 November 9, 2021.  (No. 3:20-cv-08474-JSC, Dkt. No. 55.)  Plaintiff then filed *Pumphrey II* on

November 20, 2021.  (Dkt. No. 1.)

## DISCUSSION

### I.     Plaintiff's Opposition

As a preliminary matter, the Court must address Plaintiff's *ex parte* application to file his opposition one day late.  (Dkt. No. 22; *see* Dkt. No. 21.)  Plaintiff's counsel attests that his computer crashed and prevented a timely filing.  (Dkt. No. 22 at 2.)  Notwithstanding the *ex parte* styling, the Court construes Plaintiff's application as a motion to enlarge time, which a party may oppose.  *See* N.D. Cal. Civ. L.R. 6-3(b).  Defendants oppose on the grounds that Plaintiff's request is not made in good faith.  (Dkt. No. 23.)  Defendants aver that Plaintiff's counsel has previously filed strikingly similar requests citing a computer crash in several other cases, and that Plaintiff's counsel conducted other business on his computer late in the day that the opposition was due.  (Dkt. No. 23-1 ¶¶ 6–10.)

Under Federal Rule of Civil Procedure 6(b)(1)(B), the Court "may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Factors relevant to excusable neglect include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

The Court is troubled by Plaintiff's counsel's declaration in light of the evidence submitted by Defendants.  Nonetheless, as explained at oral argument, even if the Court strikes the opposition, it must still address the motion on the merits, especially since it presents a purely legal question.  The Court will separately address the declaration issue and addresses the merits of the motion below.

### II.    Duplicative Complaint

"Plaintiffs generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (cleaned up), *overruled on other*

*grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008); *see United States v. Haytian Republic*, 154 U.S. 118, 124–25 (1894). Claim splitting, or filing a duplicative complaint, is not an appropriate way around the denial of leave to amend an earlier-filed complaint. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000) ("[M]uch of the [*Curtis I* proposed amended complaint] alleged events that had occurred prior to *Curtis I*'s filing. If plaintiffs had timely raised those allegations, they would have been heard in *Curtis I*. By filing them in a second action, plaintiffs attempted to avoid the consequences of their delay."). "To determine whether a suit is duplicative, we borrow from the test for claim preclusion," examining "whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 688–89.

### A. Causes of Action

The transaction test determines whether the causes of action in the earlier- and later-filed complaints are the same. *Id.* at 689. The test has four criteria, the last of which is most important:

> (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Id.* (cleaned up). As in *Adams*, *Pumphrey II* clearly shares a transactional nucleus of facts with *Pumphrey I*. *Pumphrey II* omits the Pittsburg officers and identifies the formerly unnamed County deputies, but keeps the County as a defendant. It brings a new legal theory of denial of medical care and disability discrimination, but keeps the Fourteenth Amendment claim. Finally, it drops the factual allegations related to Plaintiff's arrest by Pittsburg police officers, but keeps all the allegations related to Plaintiff's detention at Martinez Jail. *See id.* at 689–90 (later-filed complaint identified additional defendants and legal theories but shared majority of claims and same set of facts). For related reasons, *Pumphrey II* would present substantially the same evidence as *Pumphrey I* and involves infringement of the same right.

Accordingly, *Pumphrey I* and *II* involve the same causes of action.

### B. Parties or Privies

The second element of the duplicative complaint analysis considers whether the "parties or

5

privies to the action[] are the same." *Id.* at 689; *see Rivera v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO, Loc. 444*, No. 3:16-cv-04959-WHO, 2017 WL 3021038, at *3 n.2 (N.D. Cal. July 17, 2017) (explaining that *Adams*' discussion of the virtual representation theory of privity was overruled by *Taylor v. Sturgell*, but the remainder of *Adams* is good law); *see also Miller v. Najera*, No. 20-17348, 2021 WL 6067003 (9th Cir. Dec. 20, 2021) (unpublished) (applying *Adams*); *Owens v. Braithwaite*, 812 F. App'x 577 (9th Cir. 2020) (unpublished) (same).

Given that Plaintiff already sued the County with the same causes of action in *Pumphrey I*, his *Pumphrey II* complaint is duplicative against the County. *See Amie v. County of Los Angeles*, No. CV 15-03134 DMG (PLAx), 2015 WL 13916084, at *5 (C.D. Cal. Nov. 2, 2015) (dismissing identical defendants from later-filed suit). Accordingly, the Court GRANTS Defendants' motion to dismiss as to the County.

As to the County deputies named in *Pumphrey II* who are not parties to *Pumphrey I*, (Dkt. No. 3 ¶¶ 3–7), the parties are not "the same." *Adams*, 487 F.3d at 689. "Even when the parties are not identical, privity may exist if there is substantial identity between parties, that is, when there is sufficient commonality of interest." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (cleaned up). Defendants argue that privity exists because of a "pre-existing substantive legal relationship" between the County and the deputies and because the County "adequately represented" the deputies in *Pumphrey I*. *Taylor*, 553 U.S. at 894 (identifying six exceptions to the rule against nonparty preclusion).

### 1. Pre-existing Substantive Legal Relationship

The Supreme Court has explained that qualifying "pre-existing substantive legal relationships" include "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." *Id.* "These exceptions originated as much from the needs of property law as from the values of preclusion by judgment." *Id.* (cleaned up). Defendants argue that the employment relationship between the deputies and the County is a similar substantive legal relationship. This argument fails to persuade because the deputies and the County are subject to different theories and scopes of liability. *See Benavidez v. County of San Diego*, 993 F.3d 1134 (9th Cir. 2021) ("[M]unicipalities may only be held liable under section 1983 for constitutional

6

violations resulting from official county policy or custom."); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.C.*, 436 U.S. 658, 690–95 (1978). They do not simply inherit the rights, obligations, and defenses of the other. Whether the deputies are liable for excessive force is a separate inquiry from whether the County is liable for their conduct. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Defendants cite cases with theories closer to vicarious governmental liability for the conduct of government employees, which are distinct from the *Monell* context here. *See Rasooly v. Tarin*, 691 F. App'x 432, 433 (9th Cir. 2017) (unpublished) (finding privity under California law where County would be vicariously liable for child support enforcement employee's conduct); *Davis v. County of Maui*, No. 10–00070 KSC, 2010 WL 11531281, at *10 (D. Haw. May 4, 2010) (finding privity under Hawaii law where government employees enforced a published rule on water meters).

Defendants' insistence that there is a substantive legal relationship because the County pays for the defense and any liability of the deputies is unsupported by any precedent. Instead, the relationship of the County to the individual defendants is similar to that in *Adams*, where the county agency employed the individual defendants. *Adams* held there was privity under the virtual representation theory, 487 F.3d at 691, the theory which *Taylor* rejected, 553 U.S. at 904. Thus, there is no legal basis for finding a substantive legal relationship under the facts alleged here. Defendants' reliance on *Madrid v. Martin*, No. C10-05015-JSW, 2011 WL 13257832 (N.D. Cal. Mar. 7, 2011), is unpersuasive given that the opinion did not include any analysis of the privity question.

Accordingly, Defendants have not established that they meet the pre-existing substantive legal relationship exception to the rule against nonparty preclusion. *See Taylor*, 553 U.S. at 894.

### 2. Adequate Representation

The Supreme Court has also "confirmed that, in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit." *Id.* (cleaned up). "Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees,

guardians, and other fiduciaries." *Id.* (cleaned up); *see, e.g.*, *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1123–24 (C.D. Cal. 2016) (holding that individual plaintiff in later-filed suit was adequately represented as a class member in earlier-filed suit). Defendants argue that the County adequately represented the deputies in *Pumphrey I* by opposing Plaintiff's motion for leave to amend to name the deputies. For similar reasons as the pre-existing substantive legal relationship exception, Defendants have not established that this exception applies. The deputies do not have the same interests as the County because they are subject to different theories of liability. Additionally, the deputies are sued in their individual capacity, (Dkt. No. 3 ¶¶ 3–7), and thus were not adequately represented by the County for which they worked in their official capacity. *See Amie*, 2015 WL 13916084, at *5–6 (holding that officer sued in individual capacity was not in privity with County).

Accordingly, Defendants have not established that they meet the adequate representation exception to the rule against nonparty preclusion. *See Taylor*, 553 U.S. at 894.

\* \* \*

Although *Pumphrey I* and *II* involve the same causes of action, they involve privies only with respect to the County, not the deputies. *See Adams*, 487 F.3d at 688–89. Accordingly, the Court GRANTS Defendants' motion to dismiss as to the County but DENIES as to the other Defendants.

Where all or part of a complaint is duplicative, a court has discretion to "to dismiss [the] later-filed complaint without prejudice, to consolidate the two actions, [] to stay or enjoin proceedings, . . . or to dismiss the second action with prejudice." *Id.* at 692; *see, e.g.*, *Amie*, 2015 WL 13916084, at *6–7 (staying later-filed suit pending resolution of earlier-filed suit). The Court exercises its discretion to dismiss the County from *Pumphrey II* with prejudice. "[W]here one district court had duplicative suits contemporaneously pending on its docket, . . . [dismissal] with prejudice . . . protect[s] the parties from vexatious and expensive litigation and [] serve[s] the societal interest in bringing an end to disputes." *Adams*, 487 F.3d at 692–93.

## CONCLUSION

Defendants' motion to dismiss is GRANTED in part and DENIED in part. The *Pumphrey*

1    *II* complaint against Contra Costa County is dismissed with prejudice, but the remainder is not
2    dismissed.
3    **IT IS SO ORDERED.**
4    Dated: March 3, 2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge